**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jeff J. JELINSKI, Defendant-Appellant.**

**No. 26914.**

United States Court of Appeals
Fifth Circuit.

May 23, 1969.

Rehearing Denied June 19, 1969.

Philip E. Hamner, San Antonio, Tex., Court appointed, for appellant.

Ted Butler, U. S. Atty., Wayne F. Speck, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before BELL and THORNBERRY, Circuit Judges, and CHOATE, Senior District Judge.

CHOATE, Senior District Judge:

Appellant, sixteen year old Jeff J. Jelinski, was adjudged a juvenile delinquent[1] for his violation of 18 U.S.C. § 1382, in that he re-entered Kelly Air Force Base, Texas, after being barred therefrom by order of the Base Commander.[2] The District Judge ordered that appellant be committed to the Attorney General for a period of sixty days for observation and study[3] preliminary to further commitment or grant of probation.

Appellant is the civilian son of a serviceman who was stationed at the Kelly Base. When appellant's father was transferred overseas, the family was required by military regulations to move from their quarters on the Base. Appellant, however, was permitted to continue to enjoy the Base recreational facilities and to make purchases on the Base at a rate afforded military personnel. On December 4, 1967, the Base Commander, having received numerous reports of appellant's misconduct on the Base, issued an order, without prior notice or hearing, barring appellant from re-entering the Base. The order was delivered to and received by appellant and his mother. On July 28, 1968, appellant was arrested on the base.[4]

Appellant does not, and indeed cannot, seriously question the Base Commander's authority to exclude civilians from the area of his command. See Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) and Weissman v. United States, 387 F.2d 271 (10 Cir. 1967). Further, no issue is raised regarding notice of the order of debarment which appellant was found to have violated.[5] Nor can it be said that the order was not rationally premised. However, appellant strenuously argues that the *issuance* of the order without notice and without a prior hearing on the merits was a denial of due process of law.

Passing over the rather serious question of whether this issue is properly assertable in this proceeding,[6] the Base Commander was not required to afford notice and a hearing to appellant prior to barring him from the base. The controlling case is Cafeteria & Restaurant Workers Union v. McElroy, supra. There, the Supreme Court stated that

---

1. Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq.

2. The statute makes it a crime to re-enter or be found within a military reservation "after having been * * * ordered not to reenter by any officer or person in command or charge thereof * * *."

3. 18 U.S.C. § 5034.

4. We find that there was ample evidence to support the District Court's finding that appellant had re-entered a military "reservation" or "installation" within the meaning of the statute. See Packard v. United States, 339 F.2d 887 (9 Cir. 1964) affirming D.C., 236 F.Supp. 585.

5. The order, signed by appellant and his mother, quoted the statutory provision and warned that a violation would result in arrest and prosecution.

6. The underlying bases of the order are not in issue in the criminal proceeding. The criminal responsibility under § 1382 is premised on a violation of the mandate of the order, not its substantive basis.

[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. Where it has been possible to characterize that private interest (perhaps in oversimplification) as a mere privilege subject to the Executive's plenary power, it has traditionally been held that notice and hearing are not constitutionally required. * * *

[T]he governmental function operating here was not the power to regulate or license, as lawmaker, an entire trade or profession, or to control an entire branch of private business, but, rather, as proprietor, to manage the internal operation of an important federal military establishment. [citations omitted] In that proprietary military capacity, the Federal Government, as has been pointed out, has traditionally exercised unfettered control. * * *

This case, like Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed 1108, involves the Federal Government's dispatch of its own internal affairs.

367 U.S. at 895, 896, 81 S.Ct. at 1749.

We do not doubt the Commander's historically recognized authority to summarily bar civilians from a military establishment in the exercise of his discretion in managing the internal operations of the military facility. Conversely, appellant's primary interest in entering the base was the slight economic advantage gained through his use of the military facilities.[7] And, subsequent to his father's transfer, this was a mere

privilege in the first instance. Balancing the two interests, a hearing was not constitutionally required.

No error being shown, the judgment of the District Court is

Affirmed.

---

7. The long range effect of the "misbehavior" basis of the order on appellant, if any, is purely conjectural.