**Richard P. PAUL, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 89–3322.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1991.

Decided April 11, 1991.

Barry Levenstam, Jerold S. Solovy, C. John Koch, Terrence J. Truax, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

---

Francis D. Schmitz, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for defendant-appellee.

Before CUDAHY, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Richard Paul told the police in New Berlin, Wisconsin, that he had been robbed of a van and an attaché case. Police from nearby Wauwatosa found the case within three hours. It contained $16,940 and 83 grams of cocaine. Paul claimed the money but not the cocaine. The police, understandably suspicious, held onto both. They also recovered a safe containing jewels and $33,000 in cash. The Drug Enforcement Administration obtained the money from the police on the authority of a federal warrant and began forfeiture proceedings against the $16,940, contending that it is proceeds of drug transactions.[1] Paul did not contest the forfeiture but filed a petition for remission in October 1985. The DEA denied this petition on February 21, 1986, and the currency was administratively forfeited on March 21, 1986.

A grand jury indicted Paul in February 1986 for drug crimes; the indictment sought forfeiture of the $33,000, the jewels, a car, and Paul's residence. It did not mention the $16,940. On April 29, 1986, Paul pleaded guilty to one of the counts. As part of the plea bargain, Paul agreed to the forfeiture of his residence; the prosecution agreed to dismiss all other portions of the indictment seeking forfeiture. Ever since, the parties have been locked in combat about the $16,940. Paul says that he is entitled to this money under the plea bargain; the United States says that it was forfeited outside of the criminal case.

Paul wrote the DEA in December 1986 asking for the money; the DEA replied that the forfeiture proceeding was closed. Paul wrote the Bureau of Prisons in March 1987, making a tort claim; the Bureau sent this to the DEA, which once again told Paul that the forfeiture proceeding was closed. Next Paul filed this suit under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), contending that the government is detaining his money unlawfully. Missing from this list is the logical response to an unkept plea bargain: a request under 28 U.S.C. § 2255 for specific performance or, in lieu of that, a chance to plead anew. (Paul did seek to set aside his plea, on four grounds. Failure to return property other than the residence was not among them. The district court denied Paul's petition, and we affirmed in an unpublished order.) The district court dismissed the FTCA suit for want of jurisdiction, invoking 28 U.S.C. § 2680(c), which exempts from the statute "[a]ny claim arising in respect of ... the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer."

Paul presses two arguments: that cash is not "goods or merchandise", and that an agent of the DEA is not an "officer of customs or excise". "[O]ther law-enforcement officer", Paul submits, should be understood as a reference to other officers involved in customs and tax enforcement. The United States replies that § 2680(c) refers to "*any* other law-enforcement officer" and asks us to take the statute literally. Compare *Ysasi v. Rivkind*, 856 F.2d 1520 (Fed.Cir.1988) (reading "any" literally), *Schlaebitz v. Department of Justice*, 924 F.2d 193 (11th Cir.1991), and *United States v. 1500 Cases*, 249 F.2d 382 (7th Cir.1957) (same by implication), with *Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 825 (2d Cir.1985) (Oakes, J., concurring), and *A–Mark, Inc. v. Secret Service*, 593 F.2d 849, 850–51 (9th Cir.1978) (Tang, J., concurring). The Supreme Court has left the question open, *Kosak v. United States*, 465 U.S. 848, 852 n. 6, 104 S.Ct. 1519, 1522 n. 6, 79 L.Ed.2d 860 (1984). Turning to "goods or merchandise", however, the government abandons literalism and insists that because cash is a substitute for goods, and cocaine comes from outside the United States, we should under-

---

1. Paul has not argued that the federal government obtained the money in an unauthorized way, cf. *United States v. One 1979 Chevrolet C–20 Van*, 924 F.2d 120 (7th Cir.1991), or that a defect in the process used to obtain the money could support relief in this suit.

stand that the spirit of this special customs exemption reaches drug-connected money. See *United States v. $149,345.00,* 747 F.2d 1278, 1283 (9th Cir.1984). The inconsistency of these submissions does not trouble the United States Attorney, but it does trouble us. Section 2680(c) must be taken literally or functionally. If we take it literally, the government prevails on the "any . . . officer" part but loses on the "goods or merchandise" part. If we take it functionally, as a special rule for tax and customs collectors, the government just might prevail on the "goods or merchandise" part but loses on the "other law-enforcement officer" part.

Parsing § 2680(c) is unnecessary, however, and we leave the resolution of this problem for another day. The Tort Claims Act applies only to *torts,* and it is hard to see how Paul's assertions add up to a tort that would be actionable under state law. Claims based on the plea bargain invoke contract, not tort. Paul disdains any contract claim—to make one is to plead himself out of court under 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1). If he believed that the DEA erred, Paul could have sought further review. In what sense is an erroneous administrative decision a tort? The FTCA is not a back door to review of the administrative decision and does not resurrect challenges that are barred by failure to comply with a deadline for seeking review.

Paul's answer is that the prosecution made "misrepresentations in connection with the plea agreement. Specifically, the Government failed to inform Mr. Paul that it was not intending to return Mr. Paul's money despite the fact that the plain language of the plea agreement . . . required that the money be returned." This sounds like a claim of breach of contract. If it is not, however, it must be a claim of fraud. If that is its burden, then Paul's claim falls through a trap door in the FTCA. Section 2680(h) excludes "[a]ny

claim arising out of . . . misrepresentation, deceit, or interference with contract rights." Deceit is intentional manipulation through lies or material omissions when there is a duty to speak; misrepresentation covers negligent misstatements. *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). Paul's claim sounds most like deceit, but if not this it must be misrepresentation.[2] So the effort to identify a tort dooms his case. Section 2680(h), like the other exceptions to § 1346(b), limits the jurisdiction of the federal courts. *Deloria v. Veterans Administration,* 927 F.2d 1009, 1012–13 (7th Cir. 1991); *Janowsky v. United States,* 913 F.2d 393 (7th Cir.1990); *Redmond v. United States,* 518 F.2d 811 (7th Cir.1975). We must notice jurisdictional flaws at any time. Whether or not we would agree with Paul about § 2680(c), the FTCA offers him no prospect of relief, and remand would be an empty gesture.

AFFIRMED.

---

2. Paul's reply brief maintains that the complaint, read liberally, states a claim for abuse of process. The proviso to § 2680(h) covering intentional torts by law enforcement officers saves abuse-of-process claims. Yet a forfeiture preceding the criminal case cannot be "abuse of process" of a criminal indictment. Paul pleaded guilty to the indictment, destroying any argument that the criminal charge itself was an abuse of process or malicious prosecution.