In the

# United States Court of Appeals
### For the Seventh Circuit

No. 08-1634

MAUREEN REYNOLDS,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-00171-SEB-TAB—**Sarah Evans Barker**, *Judge.*

ARGUED SEPTEMBER 12, 2008—DECIDED DECEMBER 9, 2008

Before RIPPLE, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* In August 2003 a security guard with General Security Services Corporation stood on the roof of the Minton-Capehart Federal Building in Indianapolis, Indiana—inexplicably naked, alone, and locked out of the building. Later that day Maureen Reynolds, a General Security officer, learned of the incident, but not the nudity, and wrote up a report. The Federal Protective Service (FPS) launched an investigation as well, which culminated in a

state prosecution against Reynolds for false reporting. Reynolds's bench trial resulted in an acquittal. But the state criminal proceedings cost Reynolds her job, so she sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671-80, asserting that FPS investigators had initiated a malicious prosecution by submitting knowingly false information to the Marion County prosecutor and the Marion County Superior Court. The district court dismissed Reynolds's complaint for lack of subject-matter jurisdiction, *see* FED. R. CIV. P. 12(b)(1), citing various grounds, including that the discretionary-function exception to the FTCA shielded the actions of FPS investigators, *see* 28 U.S.C. § 2680(a). We disagree and remand for further proceedings.

## I.

For purposes of this appeal, we accept the allegations in Reynolds's complaint as true and draw all reasonable inferences in her favor. *See Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). During the relevant period General Security contracted with the Department of Homeland Security to protect the Minton-Capehart building. In August 2003 a naked General Security guard locked himself out on the roof of the building. Eventually he was able to get the attention of another guard, who unlocked the door and let him inside. When Reynolds arrived for her shift that evening, both guards approached her and related the incident, though neither one mentioned the nudity. Shortly thereafter Reynolds filed an incident report detailing what she had learned about the episode.

Six weeks later FPS opened an investigation. FPS officers Mark Lambert and Mark Fullerton questioned the two security guards, and both admitted that one of them had been naked on the roof that day. Three days later Lambert and Fullerton interviewed Reynolds, who relayed only what she knew at the time—that a security guard had locked himself out of the building and that one of his peers had let him back in. Although Lambert and Fullerton knew that Reynolds was unaware of the nudity, they nevertheless approached the Marion County prosecutor's office and supplied an affidavit of probable cause averring that Reynolds had lied to them. That affidavit became the basis for an information charging Reynolds with false—i.e., incomplete—reporting. In light of the criminal charge, General Security placed Reynolds on an indefinite and unpaid leave-of-absence. Reynolds was eventually acquitted after a bench trial, but General Security still fired her after the verdict because of the allegations of criminal activity.

After losing her job, Reynolds sued the United States under the FTCA, *see* 28 U.S.C. §§ 1346(b)(1), 2671-80, claiming that Lambert and Fullerton, acting in their capacity as federal law enforcement officers, had "instigated and initiated" a malicious prosecution. The FTCA authorizes suits against the United States for torts committed by federal officials if the same acts would create liability for private persons under applicable state tort law. *See* 28 U.S.C. § 1346(b)(1). But the FTCA contains various exceptions to the waiver of sovereign immunity; there is no governmental liability, for example, for claims arising from

an employee's performance of a discretionary function. *See* 28 U.S.C. § 2680(a).

At the government's urging, the district court dismissed the complaint for lack of subject-matter jurisdiction, *see* FED. R. CIV. P. 12(b)(1), citing three separate grounds. First, the court concluded that the actions of Lambert and Fullerton were "clearly discretionary" under 28 U.S.C. § 2680(a) because "the decisions they made and the actions they took were tied to their own view of what public policy required." The court elaborated:

> The guidelines governing the work of the FPS leave[] room for independent judgment on the part of the officers and the exercise of discretion in deciding what evidence to gather and credit and whom to investigate and so forth. Indeed, law enforcement judgment is the quintessential discretionary activity, requiring the performance and weighing of a wide array of subjective factors in order to protect the safety and security of the federal facility.

Second, the court asserted, Lambert and Fullerton are government contractors, not "employees of the government," and therefore Reynolds could not sue the United States under the FTCA. *See* 28 U.S.C. § 2671. Third, the court reasoned, an FTCA claim for malicious prosecution requires allegations of misconduct by "investigative or law enforcement officers"—and Lambert and Fullerton did not fit that description "because the actions of which Reynolds complains did not entail any searches or seizures or . . . arrests." *See* 28 U.S.C. § 2680(h) (defining "investigative or law enforcement officer" as "any officer of the United

States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law").

This appeal followed.

## II.

Reynolds contends that all three reasons for dismissal are faulty. Before reaching her arguments, though, we must address the district court's decision to dismiss her complaint under Rule 12(b)(1). In *Palay v. United States*, 349 F.3d 418, 424-25 (7th Cir. 2003), we questioned whether statutory exceptions to the FTCA limit the jurisdictional grant or, as recent cases had suggested, the scope of the right to recover. And in *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008), we held that "[t]he statutory exceptions enumerated in § 2680(a)-(n) to the United States's waiver of sovereign immunity (found in § 1346(b)) limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts." Thus, the government's filing in the district court was, despite its label, more properly a motion to dismiss for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6); *Parrott*, 536 F.3d at 634; *Clark v. United States*, 326 F.3d 911, 913 (7th Cir. 2003). That designation governs our de novo review of whether Reynolds has stated a claim for relief. *See Palay*, 349 F.3d at 424-25.

Reynolds's chief argument on appeal—and the only one that the government responds to—is that the alleged

misconduct of Lambert and Fullerton falls outside of the FTCA's discretionary-function exception. The FTCA permits suits against the United States for personal injuries caused by the wrongful acts of federal employees acting within the scope of their employment under circumstances in which a private person would be liable to the plaintiff. *See* 28 U.S.C. § 1346(b)(1). Although the FTCA's waiver of sovereign immunity is broad, Congress has excepted certain claims from its purview, including "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see Berkovitz v. United States*, 486 U.S. 531, 535 (1988). The purpose of this discretionary-function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

The discretionary-function exception has two requirements. First, the conduct alleged must involve an element of judgment or choice. *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Berkovitz*, 486 U.S. at 536; *Palay*, 349 F.3d at 427. Conduct cannot be discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536; *see Palay*, 349 F.3d at 427. Second, given that the exception "protects only governmental actions and decisions based on considerations of public

policy," the challenged discretionary conduct must amount to a permissible exercise of policy judgment. *Berkovitz*, 486 U.S. at 537; *see Gaubert*, 499 U.S. at 323; *Palay*, 349 F.3d at 427-28. The government actor's intent is of no consequence to our analysis, "[n]or must the actor belong to the policymaking or planning ranks of government in order for the exception to apply." *Palay*, 349 F.3d at 428. All that matters is "the nature of the actions taken and . . . whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *see Varig Airlines*, 467 U.S. at 814; *Palay*, 349 F.3d at 432.

Reynolds insists that the "malicious and bad faith conduct" of Lambert and Fullerton does not fall within the discretionary-function exception. Those labels do nothing for her cause, though, and the government correctly points out that subjective intent is irrelevant to our analysis. *See Gaubert*, 499 U.S. at 325. Still, the government misses a more subtle strand of Reynolds's argument when it maintains that this is a "classic" example of the discretionary-function exception. As we understand it, Reynolds asserts—under the umbrella of "malicious and bad faith conduct" and consistent with her complaint—that Lambert and Fullerton submitted a knowingly false affidavit to the Marion County prosecutor and, ultimately, the state court in an "effort to corrupt the fairness of the prosecution." She concedes that the decision to prosecute her was discretionary; her point is that providing knowingly false information en route to a criminal prosecution is " 'sufficiently separable' from the 'protected discretionary decision.' " At oral argument we asked the government whether a law-enforcement officer involved in a criminal investigation has discretion to report information that the

officer knows to be false. To our surprise, counsel answered yes and directed us to *Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983). But that cannot be right, as a close reading of *Gray* and related cases shows.

In *Gray* the D.C. Circuit considered whether prosecutors who failed to call certain witnesses before a grand jury, omitted mention of exculpatory evidence, and misrepresented dates in a timeline of criminal activity had nevertheless engaged in activities that were not "separable from a protected discretionary function." 712 F.2d at 494, 513-16. The court concluded that the alleged misconduct was "inextricably tied to the decision to prosecute and the presentation of evidence to the Grand Jury," and that there was "no meaningful way in which the allegedly negligent investigatory acts could be considered apart from the totality of the prosecution." *Id.* at 516. The case before us is distinguishable, however. *Gray* proposes that if the decision to prosecute is discretionary, so too are the many small decisions that accompany a prosecution—how much evidence to present, whether to call certain witnesses, etc.—even if those decisions inadvertently mislead a grand jury. For that reason, challenges to the quality of an investigation or prosecution are generally barred by the discretionary-function exception. *See, e.g., Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986). But this is an altogether different scenario. Reynolds alleges that Lambert and Fullerton fueled her prosecution with knowingly false information. And how can that be a *discretionary* decision when it is proscribed by Indiana law? *See* IND. CODE §§ 35-44-2-1(a)(1), 35-44-2-2(d)(1). It cannot; a federal investigator's decision to lie under oath is separable from

the discretionary decision to prosecute. *See Moore v. Valder*, 65 F.3d 189, 197 (D.C. Cir. 1996) ("Disclosing grand jury testimony to unauthorized third parties . . . is *not* a discretionary activity nor is it inextricably tied to matters requiring the exercise of discretion."); *Limone v. United States*, 271 F.Supp.2d 345, 356 (D. Mass. 2003) (rejecting argument that law-enforcement officers had discretion to suborn perjury or falsify evidence); *Tri-State Hosp. Supply Corp. v. United States*, 142 F.Supp.2d 93, 100-01 (D.D.C. 2001) ("With respect to Tri-State's claims that Customs officials falsified records and lied to bring about a prosecution, . . . [l]ying under oath to preserve barred claims is not a protected act under the discretionary function exception."), *rev'd on other grounds*, 341 F.3d 571 (D.C. Cir. 2003); *Wang v. United States*, No. 01-1326, 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001) ("To be actionable as malicious prosecution, the investigator's conduct must be independent or quasi-independent from the non-actionable decision to prosecute and must constitute the kind of wrongful conduct that is designed to corrupt the fairness of a prosecution."). There can be no argument that perjury is the sort of "legislative [or] administrative decision[] grounded in social, economic, and political policy" that Congress sought to shield from " 'second-guessing.' " *Varig Airlines*, 467 U.S. at 814. Therefore, the discretionary-function exception has no application here.

Reynolds also contends that the district court incorrectly characterized Lambert and Fullerton as contractors, *see* 28 U.S.C. § 2671, and the government does not attempt to defend the district court on that point. As FPS investigators, Lambert and Fullerton are undoubtedly government

employees; the district court's confusion on this point stems from the uncontested contractor status of Reynolds's former employer, General Security. We need not dwell any further on this issue.

Reynolds attacks the district court's third ground for dismissal—that Lambert and Fullerton could not have engaged in malicious prosecution because they did not conduct a search, seizure, or arrest—as well. Again the government has opted not to contest the point. Relying indirectly on *Pooler v. United States*, 787 F.2d 868 (3d Cir. 1986), the district court interpreted the law-enforcement officer proviso of 28 U.S.C. § 2680(h) to require a search, seizure, or arrest in order to trigger tort liability. *See Pooler*, 787 F.2d at 872 ("We read the 1974 amendment to section 2680(h) as addressing the problem of intentionally tortious conduct occurring in the course of *the specified government activities*." (emphasis added)). Yet the plain language of § 2680(h) is not so restrictive:

> [W]ith regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising [out of] malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is *empowered by law* to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h) (emphasis added). *Pooler*'s requirement of a search, seizure, or arrest has largely escaped the attention of other circuit courts, but numerous district

courts have criticized the decision as "unduly narrow" and lacking "any principled underpinning." *E.g., Murphy v. United States*, 121 F.Supp.2d 21, 24 (D.D.C. 2000); *Ortiz v. Pearson*, 88 F.Supp.2d 151, 164-65 (S.D.N.Y. 2000) (collecting cases). Indeed, even the case cited by the district court in its order of dismissal, *Employers Ins. of Wausau v. United States*, 815 F.Supp. 255 (N.D. Ill. 1993), does not strictly require search, seizure, or arrest: "[T]he fair reading of the Section 2680(h) proviso is that even if the FTCA action for such intentional torts is not based on an actual search or seizure of evidence or arrest, it must at a minimum charge the government with wrongdoing based on 'acts or omissions of investigative or law enforcement officers' *while they are engaged in investigative or law enforcement activities.*" *Id.* at 259. We, too, disagree with *Pooler* and the district court's interpretation. Section 2680(h) does not require that a law enforcement officer commit the intentional tort while executing a search, seizing evidence, or making an arrest. *Accord Sami v. United States*, 617 F.2d 755, 764-65 (D.C. Cir. 1979).

The FTCA to one side, we still must evaluate whether Reynolds has stated a claim for relief under Indiana tort law. *See* 28 U.S.C. § 1346(b)(1); *Parrott*, 536 F.3d at 635. In order to prevail on a claim of malicious prosecution in Indiana, a plaintiff must establish that the defendant, acting with malice and without probable cause, instituted or caused to be instituted a prosecution that terminated in the plaintiff's favor. *See City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001); *Glass v. Trump Indiana, Inc.*, 802 N.E.2d 461, 466-67 (Ind. Ct. App. 2004). Probable cause exists if, following some reasonable investigation, a

reasonably intelligent and prudent person in the defendant's position would believe that the accused committed the crime charged. *Glass*, 802 N.E.2d at 467. "[T]he element of malice," meanwhile, "may be inferred from a total lack of probable cause, from the failure to make a reasonable or suitable inquiry, and from a showing of personal animosity." *Kroger Food Stores, Inc. v. Clark,* 598 N.E.2d 1084, 1089 (Ind. Ct. App. 1992). Reynolds has alleged explicitly these elements, and we see no further obstacle to her complaint at this stage. We do not, of course, vouch for the accuracy of Reynolds's allegations; our holding is merely that she has stated a claim for relief.

For these reasons we VACATE the district court's dismissal and REMAND for further proceedings.