In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1501

STEPHEN LINDER,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-2714 — **Joe Billy McDade**, *Judge.*

ARGUED APRIL 1, 2019 — DECIDED SEPTEMBER 9, 2019

Before EASTERBROOK, SYKES, and BRENNAN, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* While tracking down a fugitive, Deputy Marshal Stephen Linder interrogated the fugitive's father. Another deputy marshal later stated that he had seen Linder punch the father in the face. After an investigation by the Marshals Service and the Inspector General of the Department of Justice, Linder was indicted for federal felonies (witness tampering and using excessive force in violation of the father's civil rights). The Service put Linder on

leave, and Darryl McPherson, the U.S. Marshal for the Northern District of Illinois, instructed other deputies not to communicate with Linder or his lawyers without approval. Frustrated by this barrier to getting information from potential witnesses, Linder's lawyers asked the district court to dismiss the indictment as a sanction. That was done, see 2013 U.S. Dist. LEXIS 29641 (N.D. Ill. Mar. 5, 2013), the United States did not appeal, and Linder returned to work. He remains employed as a deputy marshal.

Linder then filed a *Bivens* action, see *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Marshal McPherson and three other persons. Later he added a suit against the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2401, 2671–80. The district court dismissed all of Linder's claims. Those under *Bivens* have been abandoned on appeal, and we have changed the caption to show that the litigation is now against the United States alone. The statutory claim failed, the district court held, because §2680(a) provides that the Act does not apply to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The judge concluded that, when deciding when federal employees must seek permission to talk with Linder or his lawyer before trial, Marshal McPherson had exercised a discretionary function.

Linder's suit accuses the United States of two torts: malicious prosecution and intentional infliction of emotional distress. His principal argument is that the discretionary-function exemption of §2680(a) does not apply to suits for malicious prosecution. He relies on §2680(h), which says that "The provisions of this chapter and section 1346(b) of this title shall not apply to— …

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

The first clause of §2680(h) takes malicious prosecution outside the scope of the FTCA, and the proviso puts it right back in again if an "investigative or law enforcement officer" is at fault. Marshal McPherson was a law enforcement officer, and it follows, Linder contends, that his claim is covered by the Act whether or not McPherson was exercising a discretionary function. This contention has the support of *Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009), which holds that the proviso overrides the rest of §2680.

*Nguyen* observes that §2680(h) tells us that "[t]he provisions of this chapter"—which is to say, 28 U.S.C. §§ 2671–80—do not apply to malicious-prosecution suits, except to the extent saved by the proviso. It follows, *Nguyen* con-

cludes, that the exceptions elsewhere in §2680, such as the discretionary-function exception, do not apply to the suits saved by the proviso. But that's just not what the proviso says, and we have it on the highest authority that we must apply this subsection to mean neither more nor less than what the language tells us. See *Millbrook v. United States*, 569 U.S. 50, 56 (2013).

The proviso says that "the provisions of this chapter and section 1346(b) of this title *shall apply* to any claim" (emphasis added) for malicious prosecution arising out of a law enforcement officer's acts. "[T]his chapter" includes §2680(a), the discretionary-function exemption. This means that *discretionary* acts by law-enforcement personnel remain outside the FTCA by virtue of §2680(a), even though the proviso allows other malicious-prosecution suits. And so multiple courts of appeals have held. See *Medina v. United States*, 259 F.3d 220, 224–26 (4th Cir. 2001); *Campos v. United States*, 888 F.3d 724, 737 (5th Cir. 2018); *Gasho v. United States*, 39 F.3d 1420, 1434–35 (9th Cir. 1994); *Gray v. Bell*, 712 F.2d 490, 507–08 (D.C. Cir. 1983). *Nguyen* stands alone, and we think that the other circuits have this right.

It isn't possible to read §2680(h) as making all of the Federal Tort Claims Act inapplicable to malicious-prosecution suits arising from law-enforcement activity. The proviso brings back what the opening clause knocks out—and what it brings back is §1346(b) plus all of Chapter 171, which includes §§ 2671 through 2680. Any other reading would make a hash of the statute. Section 1346(b) is the jurisdictional footing of the suit; if it is really knocked out and not brought back by the proviso, there would not be a basis for subject-matter jurisdiction. If §2675 is knocked out and not brought

back by the proviso, the administrative-claim requirement of the FTCA, see *McNeil v. United States*, 508 U.S. 106 (1993), would vanish. The statute of limitations that makes this administrative-claim requirement work, see 28 U.S.C. §2401(b); *United States v. Kawi Fun Wong*, 135 S. Ct. 1625 (2015), would vanish. None of these consequences—and there would be more—could be imputed to §2680(h) with a straight face. We therefore read the proviso to mean what it says: When malicious-prosecution claims arise from law-enforcement activity, the proviso applies the *whole* of the FTCA, except for the part of §2680(h) that precedes the proviso.

This brings us to the question whether, as the district judge held, Marshal McPherson was exercising a discretionary function within the scope of §2680(a). The discretionary-function exemption under that subsection has two components: first, the assertedly wrongful conduct must entail an element of judgment or choice; second, that discretion must be based on considerations of public policy. See, e.g., *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008). The district judge found that Marshal McPherson's instruction satisfies both components. A U.S. Marshal has discretion to decide how personnel under his command interact with suspended officers (including those facing criminal charges); second, that discretion rests on judgments about how best to operate the Marshals Service so that it achieves its functions with a minimum of internal discord.

Marshal McPherson did not make things up on the spur of the moment; he consulted and attempted to follow the rules (found in USMS Directive 2.2, covering "Misconduct

Investigations", which refers in turn to still other regulations and procedures) specifying how to conduct internal investigations. Many of the steps that Marshal McPherson took were performed under the direction of the Marshals Service's General Counsel, and §2.2.F.1.c requires these instructions to be implemented. Section 2680(a) tells us that there is no liability even if a regulation or directive is invalid, and even if the discretion conferred under it has been abused. When dismissing Linder's indictment in 2013, the district court suggested in some places that the Directive is invalid and in others that the discretion it confers had been abused by the General Counsel or the U.S. Marshal, but neither of these considerations permits tort liability given §2680(a).

Still, Linder asserts, no one has discretion to violate the Constitution—and, when dismissing the indictment, the district court stated that the no-contact-without-approval order violated the Confrontation Clause of the Sixth Amendment. 2013 U.S. Dist. LEXIS 29641 at *175. This is problematic. Compulsory process is a trial right; the Constitution does not entitle a criminal defendant to interview potential witnesses or take their depositions before trial. See, e.g., *Weatherford v. Bursey*, 429 U.S. 545, 559–61 (1976); *United States v. Ruiz*, 536 U.S. 622, 629 (2002). The district judge believed that the no-contact-without-approval order "intimidated" other Deputy U.S. Marshals, reducing the probability that they would be forthcoming at trial, but that belief was never put to the test by holding a trial to see what evidence Linder could obtain. The district court's order dismissing the indictment did not mention *Weatherford* or *Ruiz*. We do not decide whether the district court's order in 2013 was correct, but it did not rest on a conclusion that the Marshals Service had violated any statute or a discovery order under Fed. R. Crim. P. 15 or 16.

What's more, the theme that "no one has discretion to violate the Constitution" has nothing to do with the Federal Tort Claims Act, which does not apply to constitutional violations. It applies to torts, as defined by state law—that is to say, "circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" (28 U.S.C. §1346(b)(1); emphasis added). The Constitution governs the conduct of public officials, not private ones.

The limited coverage of the FTCA, and its inapplicability to constitutional torts, is why the Supreme Court created the *Bivens* remedy against individual federal employees. And when, in the wake of *Bivens*, Congress adopted the Westfall Act to permit the Attorney General to substitute the United States as a defendant in lieu of a federal employee, it prohibited this step when the plaintiff's claim rests on the Constitution. 28 U.S.C. §2679(b)(2)(A). This leaves the FTCA as a means to seek damages for common-law torts, without regard to constitutional theories. And, now that all claims against the individual defendants have been abandoned, that's what this suit is.

Still, Linder insists, just as no one has discretion to violate the Constitution, no one has discretion to commit a tort such as malicious prosecution or intentional infliction of emotional distress. That's true, in the sense that a tort is a civil wrong. No one should commit a civil wrong. But unless §2680(a) is to be drained of meaning, it must apply to discretionary acts that are tortious. That's the point of an *exception*: It forecloses an award of damages that otherwise would be justified by a tort. Nothing in subsection (a) suggests that some discretionary but tortious acts are outside the FTCA

while others aren't. See *Kiiskila v. United States*, 466 F.2d 626 (7th Cir. 1972).

The upshot of §2680(a) is that, when some legal doctrine creates discretion, the fact that the discretion was misused and a tort ensued does not lead to liability for the Treasury. No one can doubt that the investigation of (potential) crimes, and the management of a federal workforce in which one employee is a (potential) criminal, are discretion-laden subjects. There is no one right way to investigate an allegation of crime, no one right way for federal employees to relate to their colleagues who have been suspended pending the resolution of criminal charges. Our opinion in *Reynolds* shows that criminal investigation and prosecution are rife with legitimate discretion, and that how discretion is exercised rests on potentially contestable visions of wise policy. Other circuits agree with that view. See, e.g., *O'Ferrell v. United States*, 253 F.3d 1257 (11th Cir. 2001).

To say that criminal investigation and prosecution are suffused with discretion does not imply that every possible step must be within the scope of §2680(a). *Reynolds* makes this point in holding that although many prosecutorial steps are discretionary, knowingly providing false information (i.e., perjury) is not. A step "sufficiently separable" from legitimate discretion can be actionable, *Reynolds* concludes (549 F.3d at 1113), even though bona fide discretion is not. Linder wants us to use this exception to swallow the rule, with the theme that no one has discretion to commit a tort. But there is a blanket rule against perjury, in a way that there is not a mechanical rule about how a federal workforce should be run while one employee is under indictment.

When dismissing the indictment the district court did not find the violation of a rule such as "don't lie under oath." Instead it found that management's instructions to the workforce unduly undermined Linder's ability to gather evidence. Perhaps a different way of limiting contact with other deputies would have been proper. Perhaps a different judge would have denied the motion to dismiss the indictment, observing that the Marshals Service had not violated any discovery order. Because Linder does not contend that the United States violated any firm rule limiting the scope of discretion, the sort of "sufficiently separable" civil wrong discussed in *Reynolds* has not been made out.

We have so far not mentioned Linder's contention that Special Agent Kevin Shirley, who led the criminal investigation on behalf of the Inspector General and the Civil Rights Division of the Department of Justice, committed perjury in affidavits he submitted to the district court in connection with Linder's motion to dismiss the indictment. We must assume that Linder is correct in labeling some statements "perjury," though that characterization has not been tested; Judge Kendall did not find, when dismissing the indictment, that Shirley had lied under oath. Perjury is not a discretionary act, as we have explained, and is not covered by §2680(a). But it is also not a tort when it is harmless. Linder *prevailed* in his effort to have the indictment dismissed. No harm, no tort. See, e.g., *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015). (To the extent that Linder's claim rests on any of Shirley's investigatory actions, our discussion of the discretionary-function exemption applies to him and need not be repeated.)

Congress might have chosen to provide financial relief to all persons who are charged with crime but never convicted. The Federal Tort Claims Act does not do this, however, and Linder has not claimed that he is entitled to relief under 28 U.S.C. §§ 2513 and 1495, which apply to persons able to prove their innocence. The judgment of the district court is therefore

AFFIRMED.